UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

(WORCESTER DIVISION)

CHRISTOPHER P. DALY,

Plaintiff,

v.Civil Action No. 4:26-cv-40014

EARLY WARNING SERVICES, LLC,

Defendant.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Christopher P. Daly, appearing pro se, files this Second Amended Complaint against Defendant Early Warning Services, LLC ("EWS") and alleges as follows:

## I. INTRODUCTION

1.This is an action for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), by Defendant Early Warning Services, LLC, a nationwide specialty consumer reporting agency that maintains consumer banking-history reports used by financial institutions to approve or deny checking, savings, and other deposit accounts, and that operates the Zelle® payment network.

2.EWS failed to timely disclose Plaintiff's consumer file upon request; conducted a self-initiated reinvestigation of Plaintiff's file before Plaintiff had ever seen the contents of that file and without a consumer dispute of specific information directing it to do so; maintained an incorrect Social Security number as Plaintiff's identifier in its own file after Plaintiff had

already given EWS his correct identifying documents; applied, and then rescinded, a statutory identity-theft block on information in Plaintiff's file; and reinserted the rescinded information without a valid basis for doing so — causing Plaintiff to be denied banking and credit products by at least six financial institutions and causing him documented emotional and physical harm.

3.Plaintiff brings this action for actual, statutory, and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## II. PARTIES

4.Plaintiff Christopher P. Daly ("Plaintiff" or "Daly") is a natural person residing at 1395 Main Street, Worcester, Massachusetts 01603, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.Defendant Early Warning Services, LLC ("EWS") is a limited liability company with a principal place of business at 5801 N. Pima Road, Scottsdale, Arizona 85250, and is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). EWS's Corporate Disclosure Statement, filed in this action on April 30, 2026 (ECF No. 14), identifies the following financial institutions as holding an ownership interest of 10% or more in EWS: Bank of America, N.A.; Capital One, N.A.; JPMorgan Chase Bank, N.A.; PNC Bank, National Association; Truist Bank; U.S. Bank National Association; and Wells Fargo Bank, N.A. Plaintiff refers to this ownership relationship between EWS and these seven financial institutions throughout this Complaint as the "Ownership Relationship."

## III. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 because this action arises under the FCRA.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, where Plaintiff resides.

8. Plaintiff's consumer identification number with EWS is Consumer ID 1281953.

## IV. FACTUAL ALLEGATIONS

### A. EWS's Consumer Reporting Function

9. EWS maintains a nationwide database of consumer banking history that financial institutions use to evaluate applications for checking, savings, and other deposit accounts. Reports EWS provides to those institutions are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

### B. Plaintiff's October and December 2024 Disclosure Requests

10. On October 14, 2024, at approximately 12:34 a.m. Eastern time, Plaintiff transmitted a three-page fax to EWS at (480) 656-6850 requesting disclosure of his consumer file. An automated fax history log confirms the transmission was completed at 12:37 a.m. and marked "Delivered." (Ex. 15.)

11. EWS did not respond to the October 14, 2024 fax within the time required by 15 U.S.C. § 1681g(a).

12. On December 22, 2024, Plaintiff sent EWS a further written demand referencing his October 14, 2024 fax and a second fax he stated he sent on December 11, 2024, and stating that he had received no response to either. (Ex. 18.)

13. On December 23, 2024, at 3:47 p.m., EWS emailed Plaintiff from consumerservices@earlywarning.com, stating that EWS had received "your request for your File Disclosure and/or Dispute" and requesting a copy of Plaintiff's government-issued identification and his Social Security number to verify his identity. (Ex. 36.)

14. On December 24, 2024, at approximately 12:34 a.m., Plaintiff faxed EWS a completed EWS Consumer Identification Form containing his name, address, telephone number, Social Security number, date of birth, and driver's license number. (Ex. 33; Ex. 37.)

15. Later on December 24, 2024, Plaintiff emailed EWS a photograph of his driver's license and a photograph of his Social Security card, and stated: "Already sent multiple times actually sent to this exact email that you are replying to stop playing games. Delete the negative marks from the file you are in breach of federal law." (Ex. 34; Ex. 42.)

16. EWS's own March 19, 2025 letter states that EWS "verified your identifying information via email on December 24, 2024." EWS's identity verification of Plaintiff — using the driver's license and Social Security card Plaintiff provided that same day — was therefore complete no later than December 24, 2024. (Ex. 2; Ex. 34; Ex. 42.)

17. On January 1, 2025, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), describing the issue as being "unable to get" his consumer report. As of that date, EWS had not provided Plaintiff any disclosure of the contents of his file. (Ex. 11.)

18. On January 7, 2025, EWS issued a "Comprehensive File Disclosure" to Plaintiff for Consumer ID 1281953 — eighty-five days after Plaintiff's October 14, 2024 fax and six days after Plaintiff's CFPB complaint. (Ex. 1.)

19. Under the heading "Information You Provided," EWS's January 7, 2025 disclosure lists, as the Social Security number for Consumer ID 1281953, a nine-digit number whose first three and last four digits match Plaintiff's actual Social Security number but whose fourth and fifth digits do not. Plaintiff's actual Social Security number appears on the driver's license and Social Security card Plaintiff had already sent EWS by email and fax on December 24, 2024, and on the EWS Consumer Identification Form Plaintiff completed and faxed to EWS that same date. (Ex. 1; Ex. 33; Ex. 34; Ex. 37; Ex. 42.) The full digits of both numbers are omitted from this pleading pursuant to Fed. R. Civ. P. 5.2(a)(1) and are set out in the underlying exhibits, which will be filed or produced in whatever redacted or sealed form the Court's procedures require. EWS issued this disclosure, listing an incorrect Social Security number as the identifier for Plaintiff's file, fourteen days after its own letter states that EWS had verified Plaintiff's identifying information using the correct documents Plaintiff had provided. (Ex. 2.)

20. On March 19, 2025, EWS sent Plaintiff a letter stating: "EWS has no record of receiving any requests or demands from you prior to your December 2024 correspondence." (Ex. 2.) This statement is contradicted by, among other things, the October 14, 2024 fax delivery confirmation (Ex. 15), Plaintiff's December 22, 2024 letter referencing that fax (Ex. 18), and Plaintiff's December 24, 2024 email stating he had "already sent multiple times" (Ex. 34).

**C. EWS's Self-Initiated Furnisher Disputes**

21. EWS's March 19, 2025 letter further states: "EWS, in accordance with its FCRA obligations, initiated disputes on your behalf with each furnisher who had furnished any perceived

negative information about you." (Ex. 2.) EWS initiated these furnisher disputes on or about December 24, 2024.

22. As of December 24, 2024, and through January 7, 2025, EWS had not yet disclosed to Plaintiff the contents of his consumer file. (See Paragraphs 12 and 17.) Plaintiff's December 22 and December 24, 2024 communications to EWS accordingly did not, and could not, identify or dispute the accuracy of any specific item of information in Plaintiff's file, because Plaintiff had not been shown what the file contained. Plaintiff's communications instead demanded that EWS produce the file it had already been withholding for more than two months and, in the alternative, delete the negative information EWS was continuing to withhold from him. (Ex. 18; Ex. 34.)

23. On December 27, 2024 — three days after initiating the furnisher disputes described above — EWS notified Plaintiff that it had completed reinvestigation of, and verified as accurate, at least four Capital One accounts in Plaintiff's file: Capital One 360 account ending 9155, Dispute Case ID 747089 (Ex. 10); Capital One account ending 0724 (Ex. 25); Capital One account ending 0811, Dispute Case ID 74709 (Ex. 31); and Capital One 360 account ending 0754, Dispute Case ID 747088 (Ex. 43). Each of these four verifications was obtained from Capital One — a furnisher subject to the Ownership Relationship described in Paragraph 5.

24. On December 16, 2024 — eight days before EWS initiated its self-directed reinvestigation of account ending 9155, and eleven days before EWS verified that account as "accurate and complete" — Capital One had already issued a written determination that account ending 9155 was fraudulent, that Plaintiff was not responsible for it, and that Capital One had

directed the credit reporting agencies to remove the account from Plaintiff's credit file. (Ex. 24.)

25. Between January 15, 2025 and January 23, 2025, EWS deleted the following furnisher records from Plaintiff's file after determining they were "incomplete, inaccurate, or could not be verified": a Bank of America account ending 9422 and a second Bank of America record, Dispute Case IDs 747086 and 747082 (Ex. 19a; Ex. 19b); a Bank Mobile account ending 8746, Dispute Case ID 747085 (Ex. 21); a Fidelity Investments account ending 6448, Dispute Case ID 747090 (Ex. 22); and a Washington Savings Bank MA inquiry, Dispute Case ID 747103. EWS's own file had associated the Bank Mobile account with an address — 10 Locust Street, Cherry Valley, Massachusetts — that does not match Plaintiff's address of record. (Ex. 1; Ex. 21.)

26. EWS also deleted five separate Wells Fargo records — Dispute Case IDs 747107, 747104, 747111, 747098, and 747096 — as inaccurate, incomplete, or unverifiable, including a record with a stated inquiry date of October 9, 2024. (Ex. 9; Ex. 8.)

27. On January 23, 2025, Zelle® — a payment network EWS operates — sent Plaintiff an interim response to his January 1, 2025 CFPB complaint, stating it needed up to sixty days to investigate. (Ex. 45.) On January 30, 2025, EWS itself responded to the same CFPB complaint, listing the furnisher deletions described in Paragraphs 25 and 26 and stating that a JPMorgan Chase record, Dispute Case ID 747092, had been reinvestigated and asserted by JPMorgan Chase to be accurate. The CFPB complaint was then closed as "company responded," without any correction of the disclosure delay that was the subject of the complaint. (Ex. 8.)

28.EWS's certification of four Capital One furnisher accounts as accurate within seventy-two hours, immediately followed by the deletion of nine separate non-Capital-One furnisher records within the following weeks as inaccurate or unverifiable, is alleged on information and belief to reflect a reinvestigation process that did not follow reasonable procedures to assure maximum possible accuracy as required by 15 U.S.C. § 1681e(b).

**D. The January–February 2026 Identity Theft Block and Rescission**

29.On January 23, 2026, EWS received Plaintiff's request to block information resulting from identity theft and applied a block, under Dispute Case ID 820189, to information furnished by Capital One/Capital One 360 for account ending 0754. EWS's confirmation letter stated the block was applied "as required by the Fair Credit Reporting Act." (Ex. 4.)

30.On that same date, January 23, 2026, PNC Bank denied Plaintiff's application for a Virtual Wallet account, citing information from Early Warning Services as the basis for the denial. (Ex. 6.) Also on January 23, 2026, Capital One denied Plaintiff's application for pre-approved credit, citing "delinquent Capital One credit obligation(s)" and "activity inconsistent with typical customer account usage." (Ex. 7.)

31.On January 26, 2026, Plaintiff sent EWS a written dispute captioned "Early Warning Services' Ongoing and Willful Violations of the FCRA," stating that his file contained information "that is false, incomplete, and/or not attributable to me" resulting from "documented identity theft," and referencing an FTC Identity Theft Report he had already submitted. (Ex. 44.)

32.On February 6, 2026, Capital One issued a written fraud determination for a Capital One account ending 9241, stating that the account was fraudulent, that Plaintiff was not

responsible for it, that Capital One had sent updated information directing the credit reporting agencies to remove the account from Plaintiff's file, and that the credit reporting agencies "may take up to 60 days" to process that removal. (Ex. 3.)

33. On February 10, 2026 — four days after Capital One's February 6, 2026 fraud determination, and within the sixty-day processing window Capital One itself described — EWS rescinded the identity theft block on Dispute Case ID 820189 and reinserted the previously blocked Capital One/Capital One 360 information into Plaintiff's file, stating: "Upon further review Early Warning has determined that the blocked information furnished by Capital One/Capital One 360 is accurate and complete." (Ex. 5.)

34. The account rescinded and reinserted on February 10, 2026 — Capital One/Capital One 360 account ending 0754 — is the same account EWS had verified "accurate and complete" on December 27, 2024 (Ex. 43) before applying the identity-theft block to it on January 23, 2026 (Ex. 4). EWS's own records thus reflect three separate determinations regarding this single account within a fourteen-month period: accurate (December 2024); resulting from identity theft (January 2026); and accurate again (February 2026).

35. On information and belief, the verification EWS relied upon to determine on February 10, 2026 that the blocked information was "accurate and complete" was obtained from Capital One — the same furnisher that, four days earlier, had issued the written fraud determination described in Paragraph 32, and that is subject to the Ownership Relationship described in Paragraph 5. The precise nature and source of the February 10, 2026 verification is presently known only to EWS and is a discovery target; it is not admitted in any document currently in Plaintiff's possession.

36. On October 9, 2025 — before the events described in this Section D — Plaintiff emailed EWS Consumer Services regarding contradictory information in his file. Plaintiff sent that email the day after an October 8, 2025 emergency-department visit at UMass Memorial Health, Harrington Webster Campus, during which Plaintiff was treated for stress-induced cardiac symptoms that his treating physician attributed to Plaintiff's receipt of a credit denial letter. (Ex. 14; Ex. 13.)

**E. Damages**

37. As a direct result of the conduct described above, Plaintiff has suffered the following documented adverse actions:

(a) PNC Bank — denial of a Virtual Wallet account application, January 23, 2026, citing Early Warning Services as the reporting agency (Ex. 6);

(b) Capital One — denial of a pre-approved credit application, January 23, 2026 (Ex. 7);

(c) Millbury Federal Credit Union — denial of a deposit account application, January 29, 2026, citing Early Warning Services as the reporting agency (Ex. 27);

(d) Affirm/Celtic Bank — denial of an installment loan application, May 14, 2025, citing Early Warning Services as the reporting agency (Ex. 32);

(e) Ally Bank — denial of an online bank account application, March 7, 2026, citing Early Warning Services as the reporting agency, twenty-five days after EWS's February 10, 2026 rescission of the identity-theft block described in Paragraph 33 (Ex. 26); and

(f) Wells Fargo Bank, N.A. — closure of two deposit accounts, ending 4046 and 2584, effective February 10, 2026 (Ex. 47), as further described in the following paragraph.

38. On January 27, 2026, Wells Fargo — an institution subject to the Ownership Relationship described in Paragraph 5 — notified Plaintiff that it was closing deposit accounts ending 4046 and 2584 because "information provided when the account was opened is inconsistent with internal and public records." The closure took effect February 10, 2026 — the same date EWS rescinded the identity-theft block and reinserted the disputed Capital One information described in Paragraph 33. Wells Fargo's written materials identified Early Warning Services among the consumer reporting agencies relevant to Plaintiff's rights regarding this deposit-account action. (Ex. 47.)

39. Plaintiff has been treated since approximately 2022 by Orobosa Osawonuyi, PMHNP, of Behavioral Healthcare Services in Worcester, Massachusetts. In a letter dated January 5, 2026, Plaintiff's treating clinician documented clinically significant regression in Plaintiff's mental health temporally correlated with ongoing credit-reporting inaccuracies, and stated a clinical opinion, to a reasonable degree of certainty, that this regression was substantially influenced by prolonged, unresolved financial stressors including the inaccurate credit-related matters described in this Complaint. (Ex. 12.)

40. On October 8, 2025, Plaintiff was treated in the emergency department at UMass Memorial Health, Harrington Webster Campus (MRN 000798775), for stress-induced cardiac symptoms. The treating physician documented that the immediate trigger was Plaintiff's receipt of a Capital One credit denial letter, and noted that Plaintiff "must find a way to alleviate the stress in his life before it causes him to have another cardiac event." (Ex. 13.)

41. Since the events described above, Plaintiff has been unable to complete telephone or online identity-verification procedures at financial institutions and consumer reporting agencies, because the verification questions presented to him do not correspond to his actual personal history. As a result, Plaintiff must appear in person to resolve routine banking matters, including fraud holds, that other consumers resolve remotely, and has on multiple occasions been unable to access his own funds until the next business day a branch was open. Plaintiff states this paragraph on personal knowledge.

42. Plaintiff has incurred time, effort, and expense responding to the conduct described above, including preparing and transmitting multiple faxes, letters, and emails to EWS, and filing complaints with the CFPB. (Ex. 11; Ex. 38; Ex. 39; Ex. 40.)

**COUNT I**

**Violation of 15 U.S.C. § 1681g**

**(Failure to Disclose)**

43. Plaintiff realleges Paragraphs 1 through 42 as if fully set forth herein.

44. EWS is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) and was, at all relevant times, obligated under 15 U.S.C. § 1681g(a) to disclose to Plaintiff, upon request, all information in Plaintiff's file at the time of the request.

45. Plaintiff requested disclosure of his consumer file by fax on October 14, 2024. (Ex. 15.)

46. EWS did not provide Plaintiff a file disclosure until January 7, 2025 — eighty-five days later. (Ex. 1.)

47. EWS's failure to timely disclose Plaintiff's file violated 15 U.S.C. § 1681g(a).

48. The disclosure EWS eventually provided was itself inadequate: it identified Plaintiff's file by a Social Security number that did not match Plaintiff's actual Social Security number, notwithstanding EWS's own statement that it had verified Plaintiff's identifying information two weeks earlier. (See Paragraphs 16 and 19.) A disclosure that misidentifies the consumer whose file it purports to describe does not satisfy 15 U.S.C. § 1681g(a).

49. EWS's violations were willful within the meaning of 15 U.S.C. § 1681n, in that EWS represented it had no record of receiving any request before December 2024 notwithstanding a machine-generated delivery confirmation of Plaintiff's October 14, 2024 fax already in EWS's own records (Ex. 15; Ex. 2), and issued a file disclosure bearing an incorrect Social Security number two weeks after stating it had verified Plaintiff's identity using his correct documents. In the alternative, EWS's violations were negligent within the meaning of 15 U.S.C. § 1681o.

50. As a direct and proximate result of EWS's violations, Plaintiff suffered the damages described in Paragraphs 37 through 42 and is entitled to statutory and punitive damages under 15 U.S.C. § 1681n, or actual damages under 15 U.S.C. § 1681o, together with costs.

**COUNT II**

**Violation of 15 U.S.C. § 1681i**

**(Unauthorized and Unreasonable Reinvestigation)**

51. Plaintiff realleges Paragraphs 1 through 42 as if fully set forth herein.

52. Section 1681i(a)(1) requires a consumer reporting agency, upon receiving a dispute from a consumer regarding the completeness or accuracy of specific information in the consumer's file, to conduct a reasonable reinvestigation of that specific information.

53. As alleged in Paragraph 22, Plaintiff had not been shown the contents of his EWS file as of the date EWS initiated the furnisher disputes described in this Complaint. Plaintiff could not have disputed the completeness or accuracy of specific information he had never seen, and did not do so. EWS's own March 19, 2025 letter confirms that what EWS treated as a trigger for reinvestigation was Plaintiff's request that negative items be removed — not a dispute of the completeness or accuracy of specific, identified information. (Ex. 2.)

54. In the alternative, if EWS's self-initiated furnisher disputes are treated as a reinvestigation under 15 U.S.C. § 1681i(a)(1), that reinvestigation did not satisfy the statute's reasonableness requirement, in that EWS obtained verification of four Capital One accounts within seventy-two hours from Capital One — a furnisher subject to the Ownership Relationship described in Paragraph 5 — and, as to at least one of those accounts, obtained that verification eleven days after Capital One had already issued a written determination that the same account was fraudulent. (Ex. 10; Ex. 24; Ex. 25; Ex. 31; Ex. 43.)

55. EWS's violation of 15 U.S.C. § 1681i was willful under 15 U.S.C. § 1681n or, in the alternative, negligent under 15 U.S.C. § 1681o.

56. As a direct and proximate result, Plaintiff suffered the damages described in Paragraphs 37 through 42 and is entitled to relief under 15 U.S.C. §§ 1681n or 1681o.

**COUNT III**

**Violation of 15 U.S.C. § 1681c-2**

**(Improper Rescission of Identity Theft Block)**

57. Plaintiff realleges Paragraphs 1 through 42 as if fully set forth herein.

58. Section 1681c-2(a) requires a consumer reporting agency, upon receipt of appropriate proof of identity and identification of information resulting from identity theft, to block the reporting of that information. Section 1681c-2(c) permits rescission of such a block only where the agency "reasonably determines that the information was blocked in error."

59. On January 23, 2026, EWS applied a block to Capital One/Capital One 360 account ending 0754 in Plaintiff's file, stating the block was applied "as required by the Fair Credit Reporting Act." (Ex. 4; see Paragraph 29.)

60. On February 10, 2026 — four days after Capital One issued a written determination that a related Capital One 360 account in Plaintiff's file was fraudulent (Ex. 3; see Paragraph 32), and within the sixty-day processing window Capital One itself described in that determination — EWS rescinded the block on account ending 0754 and reinserted the blocked information, stating the information was "accurate and complete." (Ex. 5.)

61. EWS's rescission was not a reasonable determination that the information had been blocked in error, within the meaning of 15 U.S.C. § 1681c-2(c). EWS reinserted information associated with the same furnisher — Capital One, an entity subject to the Ownership Relationship described in Paragraph 5 — that had, days earlier, disclaimed responsibility for fraudulent activity on a related account in the same file.

62. EWS's violation of 15 U.S.C. § 1681c-2 was willful under 15 U.S.C. § 1681n, in that EWS rescinded a block it had itself described as legally required, using a verification on information and belief sourced from an entity subject to the Ownership Relationship, days after that entity had confirmed fraud affecting Plaintiff's file, and after Plaintiff had given EWS written notice, on October 9, 2025, of the harm the disputed information was causing

him. (Ex. 14; Ex. 13; Ex. 44; see Paragraph 36.) In the alternative, EWS's violation was negligent under 15 U.S.C. § 1681o.

63. As a direct and proximate result, Plaintiff suffered the damages described in Paragraphs 37 through 42, including the Ally Bank denial and Wells Fargo account closure that occurred after the rescission (Ex. 26; Ex. 47; see Paragraph 38), and is entitled to relief under 15 U.S.C. §§ 1681n or 1681o.

**COUNT IV**

**Violation of 15 U.S.C. § 1681i(a)(5)(B)**

**(Unlawful Reinsertion of Previously Removed Information)**

64. Plaintiff realleges Paragraphs 1 through 42 as if fully set forth herein.

65. Section 1681i(a)(5)(B) prohibits a consumer reporting agency from reinserting previously deleted or removed information into a consumer's file unless the furnisher of the information certifies that the information is complete and accurate, and the agency provides the consumer written notice of the reinsertion.

66. EWS removed Capital One/Capital One 360 account ending 0754 from Plaintiff's consumer report when it applied the identity-theft block on January 23, 2026. (Ex. 4.) The effect of that block was that the information ceased to be included in reports EWS provided to third parties.

67. On February 10, 2026, EWS reinserted that information into Plaintiff's file. (Ex. 5.) On information and belief, EWS did not obtain, prior to reinsertion, a certification from Capital One that the information was complete and accurate that was consistent with Capital One's

own written determination, four days earlier, that a related Capital One account in the same file was fraudulent. (Ex. 3.)

68. To the extent EWS contends that a block under 15 U.S.C. § 1681c-2 is not a "deletion" within the meaning of 15 U.S.C. § 1681i(a)(5)(B), Plaintiff alleges in the alternative that EWS's reinsertion of the blocked information without a valid certification of accuracy was, functionally, a reinsertion of previously removed information governed by the certification and notice requirements of 15 U.S.C. § 1681i(a)(5)(B), and that a contrary construction would permit a consumer reporting agency to evade those requirements by labeling every removal a "block."

69. EWS's violation was willful under 15 U.S.C. § 1681n or, in the alternative, negligent under 15 U.S.C. § 1681o.

70. As a direct and proximate result, Plaintiff suffered the damages described in Paragraphs 37 through 42 and is entitled to relief under 15 U.S.C. §§ 1681n or 1681o.

**COUNT V**

**Violation of 15 U.S.C. § 1681e(b)**

**(Failure to Follow Reasonable Procedures)**

71. Plaintiff realleges Paragraphs 1 through 42 as if fully set forth herein.

72. Section 1681e(b) requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates.

73.EWS's procedures did not assure maximum possible accuracy of Plaintiff's file, as shown by, among other things: (a) EWS's maintenance of an incorrect Social Security number as Plaintiff's identifier in Consumer ID 1281953, two weeks after EWS's own letter states it had verified Plaintiff's identity using his correct documents (Ex. 1; Ex. 2; Ex. 34; Ex. 37; Ex. 42; see Paragraphs 16 and 19); (b) EWS's certification of four Capital One furnisher accounts as accurate and complete within seventy-two hours in December 2024, followed by deletion of nine separate non-Capital-One furnisher records within the following weeks as inaccurate or unverifiable (Ex. 8, 9, 10, 19a, 19b, 21, 22, 25, 31, 43); (c) EWS's maintenance, in its own file, of a Bank Mobile account associated with an address that did not match Plaintiff's address of record (Ex. 1; Ex. 21); (d) EWS's three contradictory determinations, within fourteen months, regarding the accuracy of Capital One/Capital One 360 account ending 0754 (Ex. 43; Ex. 4; Ex. 5); and (e) EWS's correspondence to Plaintiff addressed to an incorrect street address. (Ex. 46.)

74.EWS's violation of 15 U.S.C. § 1681e(b) was willful under 15 U.S.C. § 1681n or, in the alternative, negligent under 15 U.S.C. § 1681o.

75.As a direct and proximate result, Plaintiff suffered the damages described in Paragraphs 37 through 42 and is entitled to relief under 15 U.S.C. §§ 1681n or 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)enter judgment in Plaintiff's favor on each Count;

(b)award actual damages in an amount to be determined at trial;

(c)award statutory damages under 15 U.S.C. § 1681n(a)(1)(A) for each willful violation;

(d)award punitive damages under 15 U.S.C. § 1681n(a)(2);

(e)award costs, and reasonable attorney's fees to the extent allowed by law; and

(f)grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Christopher P. Daly

Christopher P. Daly, Pro Se

1395 Main Street

Worcester, MA 01603

(774) 293-3844

chris.daly79@icloud.com

Dated: July 3, 2026 [CONFIRM: must match actual e-filing date]