**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CHRISTOPHER P. DALY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | No. 4:26-cv-40014-MRG |
| | ) | |
| EARLY WARNING SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT EARLY WARNING SERVICES, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Matthew J. Zamaloff (BBO No. 642831)
CETRULO LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210
(t): 617 217 5500 1 (f): 617 217 5200
mzamaloff@cetllp.com

*Attorneys for Defendant Early Warning Services, LLC*

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. BACKGROUND AND ALLEGATIONS ........ 3

A. Plaintiff's Litigation History ........ 3

B. Plaintiff's Purported Identity Theft ........ 3

C. Purported File Disclosure Request ........ 4

D. Early Warning's Dispute Investigations ........ 5

E. Plaintiff's Alleged Damages ........ 5

III. ARGUMENT ........ 5

A. Legal Standard ........ 5

B. Plaintiff's Complaint Should Be Dismissed Because the FCRA Claims are Inadequately Pled and Fail as a Matter of Law ........ 6

1. Plaintiff does not adequately plead a Section 1681g claim (Count I) ........ 6

2. Plaintiff's 1681i claims (Count II and IV) are similarly deficient as a matter of law. ........ 9

a. Plaintiff did not submit any disputes to Early Warning. ........ 9

b. Plaintiff has not pled that Early Warning published any inaccurate information about him. ........ 10

c. Plaintiff has not pled that Early Warning failed to reasonably investigate or caused any of his alleged damages. ........ 12

d. Plaintiff's claim under 1681i(a)(5)(B) (Count IV) is also deficient because Capital One certified Plaintiff's account as valid. ........ 13

3. Plaintiff does not sufficiently plead that Early Warning violated Section 1681c-2 (Count III). ........ 13

4. Plaintiff's 1681e(b) claim (Count V) is inadequately pled and fails as a matter of law. ........ 15

a. Plaintiff has not pled that Early Warning published any consumer reports about him. ........ 16

b. Plaintiff has not pled that Early Warning published any inaccurate information about him. ........ 16

c. Plaintiff has not sufficiently pled that Early Warning's procedures are unreasonable or that Early Warning caused his damages. ........ 17

C. Plaintiff Should Not Be Granted Leave to Amend ........................................ 17
IV. CONCLUSION ........................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Equifax Info. Servs., LLC*,
No. 2:17-cv-0139-APG-NJK, 2018 WL 3025939 (D. Nev. Jun. 15, 2018), *aff'd sub nom. Alexander v. Experian Info. Sols., Inc.*, 812 F. App'x 426 (9th Cir. 2020) ....7, 8

*Allmond v. Bank of Am.*,
No. 3:07–cv–186–J33JRK, 2008 WL 2445652 (M.D. Fla. June 16, 2008) ....9

*Andre v. Customer Bank*,
No. 25-cv-10477-AK, 2026 WL 179484 (D. Mass. Jan. 23, 2026) ....17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....5, 6, 15

*Bell-Loffredo v. Equifax Info. Servs., LLC*,
No. 2:21-CV-03637-CBM-EX, 2022 WL 16894504 (C.D. Cal. Oct. 6, 2022) ....6

*Chiang v. Verizon New England Inc.*,
595 F.3d 26 (1st Cir. 2010) ....12

*Consumer Data Indus. Ass'n v. Frey*,
26 F.4th 1 (1st Cir. 2022) ....8, 14

*Daly v. Austin Capital Bank, SSB*,
Docket No. 4:26-cv-40147 (D. Mass. Jun 03, 2026) ....3

*Daly v. Capital One Financial Corporation*,
Docket No. 4:26-cv-40118 (D. Mass. Apr 27, 2026) ....3

*Daly v. ChexSystems, Inc.*,
Docket No. 4:26-cv-40092 (D. Mass. Mar 23, 2026) ....3

*Daly v. Equifax Information Services LLC*,
Docket No. 4:26-cv-40091 (D. Mass. Mar 23, 2026) ....3

*Daly v. Experian Information Solutions, Inc.*,
Docket No. 4:26-cv-40069 (D. Mass. Mar 02, 2026) ....3

*Daly v. LexisNexis Risk Solutions Inc.*,
Docket No. 4:26-cv-40090 (D. Mass. Mar 23, 2026) ....3

*Daly v. MRV Banks*,
Docket No. 4:26-cv-40088 (D. Mass. Mar 20, 2026) ........................................................ 3

*Daly v. SoFi Bank, N.A.*,
Docket No. 4:26-cv-40089 (D. Mass. Mar 23, 2026) ........................................................ 3

*Daly v. Synovus Bank, N.A.*,
Docket No. 4:26-cv-40101 (D. Mass. Apr 03, 2026) ........................................................ 3

*Daly v. TeleCheck Services, Inc.*,
Docket No. 4:25-cv-40177 (D. Mass. Oct 31, 2025) ........................................................ 3

*Daly v. Transunion LLC*,
Docket No. 4:26-cv-40128 (D. Mass. May 11, 2026) ........................................................ 3

*DeAndrade v. Trans Union LLC*,
523 F.3d 61 (1st Cir. 2010) ........................................................ 2, 10, 12

*Eller v. Experian Info. Sols., Inc.*,
No. 09-cv-0040-WJM-KMT, 2011 WL 3365955 (D. Colo. May 17, 2011) ........................ 8

*Glassman v. Computervision Corp.*,
90 F.3d 617 (1st Cir. 1996) ........................................................ 18

*Grayson v. Equifax Credit Info. Servs.*,
No. 18-cv-6977 (MKB), 2021 WL 2010398 (E.D.N.Y. Jan. 29, 2021) ........................ 14, 15

*Holden v. Holiday Inn Club Vacations Inc.*,
98 F.4th 1359 (11th Cir. 2024) ........................................................ 12

*Hyde v. Franklin Am. Mortg. Co.*,
453 F. Supp. 3d 1293 (D.S.D. 2020) ........................................................ 9

*Individual Reference Servs. Grp., Inc. v. F.T.C.*,
145 F. Supp. 2d 6 (D.D.C. 2001) ........................................................ 11

*Iyigun v. Cavalry Portfolio Servs., LLC*,
Case No. CV-12-8682-MWF, 2013 WL 950947 (C.D. Cal. 2013) ........................................ 13

*Jackson v. Warning*,
No. CV PJM 15-1233, 2016 WL 7228866 (D. Md. Dec. 13, 2016) ........................................ 6

*Johnson v. Equifax, Inc.*,
510 F. Supp. 2d 638 (S.D. Ala. 2007) ........................................................ 16

*Karle v. Sw. Credit Sys.*,
No. CV 14-30058-MGM, 2015 WL 5025449 (D. Mass. June 22, 2015), *report and recommendation adopted sub nom. Karle v. Sw. Credit Sys., Ne. Utilities Serv. Co.*, No. 14-30058-MGM, 2015 WL 5031966 (D. Mass. Aug. 25, 2015) ............7, 8, 11

*Kowalski v. Gagne*,
914 F.2d 299 (1st Cir. 1990) ............3

*Lazarre v. JPMorgan Chase Bank, N.A.*,
780 F. Supp. 2d 1320 (S.D. Fla. 2011) ............9

*McAfee v. Early Warning Services, LLC*,
No. 1:25-cv-578, 2026 WL 693172 (S.D. Oh. Mar. 12, 2026) ............7

*McIntyre v. RentGrow, Inc.*,
34 F.4th 87 (1st Cir. 2022) ............10, 17

*Merchant v. Equifax Information Services, LLC*,
616 F. Supp. 3d 146 (D. Mass. 2022) ............16, 17

*Norman v. Trans Union, LLC*,
479 F. Supp. 3d 98 (E.D. Pa. 2020) ............9

*Ortez v. RentGrow, Inc.*,
No. 24-10376-FDS, 2024 WL 4349252 (D. Mass. Sept. 30, 2024) ............6

*Osada v. Experian Info. Solut., Inc.*,
No. 11 C 2856, 290 F.R.D. 485 (N.D. Ill. 2012) ............14

*Remsburg v. Docusearch, Inc.*,
No. CV-00-211-B, 2002 WL 534439 (D.N.H. Apr. 4, 2002) ............11

*Richardson v. Fleet Bank of Mass.*,
190 F. Supp. 2d 81 (D. Mass. 2001) ............16, 17

*Roberts v. Carter-Young, Inc.*,
131 F.4th 241 (4th Cir. 2025) ............12

*Rozov v. Bank of America, N.A.*,
No. 24-13034, 2025 WL 1620921 (11th Cir. Jun. 9, 2025) ............12

*Scott v. Equifax, Inc.*,
No. 2:20-cv-2516-HLT-JPO, 2021 WL 4099007 (D. Kan. July 23, 2021) ............8

*Vaiano v. Experian Info. Sols. Inc.*,
No. 1:24-cv-12245-JEK, 2025 WL 2323521 (D. Mass. Aug. 12, 2025) ............10, 16, 17

*Varad v. Reed Elsevier Inc.*,
No. 06-11370 MLW, 2008 WL 11511440 (D. Mass. Feb. 26, 2008) ....................................11

*Verlus v. Experian Info. Sols., Inc.*,
No. 23-cv-11426-DJC, 2025 WL 836588 (D. Mass. Mar. 17, 2025)....................................10

*Watson v. Trans Union Credit Bureau*,
No. Civ. 04-205-B-C, 2005 WL 995687 (D. Me. Apr. 28, 2005) ..........................................13

**Statutes**

15 U.S.C. § 1681c-2..............................................................................1, 2, 13, 14, 15, 18

15 U.S.C. § 1681e(b) ........................................................................1, 2, 10, 15, 16, 17, 18

15 U.S.C. § 1681g..................................................................................1, 6, 7, 8, 16, 18

15 U.S.C. § 1681i....................................................................1, 2, 9, 10, 12, 13, 14, 16, 18

**Rules**

Fed. R. Civ. P. 8 .........................................................................................................15

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 17

Local Rule 7.1(b)(1)...........................................................................................................1

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1(b)(1), Defendant Early Warning Services, LLC ("Early Warning") hereby submits the following memorandum of law in support of its Motion to Dismiss the Second Amended Complaint (ECF No. 33, the "SAC") filed by Plaintiff Christopher P. Daly ("Plaintiff").

## I. INTRODUCTION

Plaintiff Christopher Daly has now filed three complaints in this action—his original Complaint (ECF No. 1), his First Amended Complaint (ECF No. 13), and now his Second Amended Complaint—and each fails to state a viable claim under the Fair Credit Reporting Act ("FCRA"). With each iteration, Plaintiff strips away prior theories and layers on new rhetorical embellishments: the SAC introduces a speculative "Ownership Relationship" conspiracy theory (SAC ¶¶ 5, 23, 35, 38, 54, 61-62), a Social Security number discrepancy in a file disclosure (*id.* ¶¶ 19, 73(a)), and a seventy-two-hour verification timeline that Plaintiff deems suspect (*id.* ¶ 28). None of these additions cures the structural deficiencies that have doomed Plaintiff's claims from the outset. And Plaintiff is no stranger to this Court—he has filed at least eleven other lawsuits in this District in just the past year, ten of which assert the ***very same*** FCRA claims, each time recycling the same playbook against a different defendant.

The SAC alleges that Early Warning failed to timely disclose Plaintiff's consumer file, conducted self-initiated reinvestigations that Plaintiff never requested, maintained an incorrect Social Security number in an file disclosure, and improperly rescinded an identity theft block before reinserting previously blocked information. On these bases, Plaintiff asserts claims under Sections 1681g, 1681i, 1681c-2, and 1681e(b) of the FCRA. Each claim fails as a matter of law:

***Section 1681g*** (***Count I***): Plaintiff's file-disclosure claim is premised on an allegedly untimely response to an October 2024 fax—but Section 1681g imposes no response deadline, and Plaintiff concedes that Early Warning sent him a Comprehensive File Disclosure on January 7,

2025. *Id.* ¶ 18. His alternative theory—that the disclosure was "inadequate" because it listed a Social Security number with two incorrect digits—likewise fails because a Social Security number is "credit header data" not actionable under the FCRA, the discrepancy did not render the disclosure unclear, and Plaintiff cannot connect it to any cognizable harm.

***Section 1681i (Counts II and IV)***: Plaintiff concedes that he never submitted a dispute of specific information to Early Warning—an affirmative admission that forecloses liability under Section 1681i. *Id.* ¶¶ 22, 53. He has also failed to identify any factual inaccuracy in any consumer report, a threshold requirement under this provision. His Section 1681i(a)(5)(B) reinsertion claim (Count IV) independently fails because Early Warning's action was an identity theft block under Section 1681c-2—not a "deletion" arising from Section 1681i(a).

***Section 1681c-2 (Count III)***: Early Warning fully complied with its statutory obligations: it placed an identity theft block on the Capital One account ending 0754 and provided prompt notice when the block was rescinded. Plaintiff's sole basis for this claim is his bare disagreement with Early Warning's determination that the blocked information was "accurate and complete," based on a purported fraud determination on a ***different*** Capital One account (ending 9241) that Plaintiff never connects to an account Early Warning actually blocked and rescinded.

***Section 1681e(b) (Count V)***: Plaintiff has not alleged that any inaccuracy appeared in a consumer report Early Warning furnished to a third party. His claim rests on an identity theft dispute—a legal challenge to the validity of underlying accounts—not a factual inaccuracy actionable under the FCRA. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2010). Nor has Plaintiff identified any unreasonable procedure or pled causation.

Because these deficiencies are structural—not matters of artful drafting—no further amendment can cure them. Each of Plaintiff's claims should be dismissed ***with prejudice***.

## II. BACKGROUND AND ALLEGATIONS

### A. Plaintiff's Litigation History

Since October 31, 2025, Plaintiff has filed no fewer than eleven lawsuits in this Court, ten of which assert FCRA claims. *See Daly v. Austin Capital Bank, SSB,* Docket No. 4:26-cv-40147 (D. Mass. Jun 03, 2026); *Daly v. Transunion LLC*, Docket No. 4:26-cv-40128 (D. Mass. May 11, 2026*); Daly v. Capital One Financial Corporation*, Docket No. 4:26-cv-40118 (D. Mass. Apr 27, 2026); *Daly v. Synovus Bank, N.A.*, Docket No. 4:26-cv-40101 (D. Mass. Apr 03, 2026); *Daly v. ChexSystems, Inc.*, Docket No. 4:26-cv-40092 (D. Mass. Mar 23, 2026); *Daly v. Equifax Information Services LLC*, Docket No. 4:26-cv-40091 (D. Mass. Mar 23, 2026); *Daly v. LexisNexis Risk Solutions Inc.*, Docket No. 4:26-cv-40090 (D. Mass. Mar 23, 2026); *Daly v. SoFi Bank, N.A.*, Docket No. 4:26-cv-40089 (D. Mass. Mar 23, 2026); *Daly v. MRV Banks*, Docket No. 4:26-cv-40088 (D. Mass. Mar 20, 2026); *Daly v. Experian Information Solutions, Inc.*, Docket No. 4:26-cv-40069 (D. Mass. Mar 02, 2026); *Daly v. TeleCheck Services, Inc.*, Docket No. 4:25-cv-40177 (D. Mass. Oct 31, 2025).[1] In each case, Plaintiff deploys the same strategy: seeking statutory damages under Section 1681n alongside purported "actual" damages for "credit-related harm" and emotional distress. This is now his third complaint in this action alone. *Compare* SAC, *with* ECF Nos. 1 (Original Complaint) and 13 (First Amended Complaint).

### B. Plaintiff's Purported Identity Theft

Plaintiff claims to be a victim of identity theft involving Capital One accounts. In his First Amended Complaint, he alleged that an unidentified person used his "identifying information" to open "fraudulent account[s]" at "multiple financial institutions," resulting in adverse reporting to

[1] The Court may take judicial notice of Plaintiff's other lawsuits. *See Kowalski v. Gagne*, 914 F.2d 299, 305-06 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

consumer reporting agencies including Early Warning—but he removed those allegations from the SAC. *Compare* SAC ¶¶ 29-36, *with* ECF No. 13 ¶¶ 12, 18.

Instead, the SAC alleges only that Capital One issued written fraud determinations for two accounts—ending 9155 and ending 9241. SAC ¶¶ 24, 32; Exs. 3, 24.[2] On January 23, 2026, Plaintiff requested that Early Warning block information relating to a third Capital One account—ending 0754—under Dispute Case ID 820189. SAC ¶ 29. Early Warning placed the block, and eighteen days later, after completing its review, notified Plaintiff that it had rescinded the block because it "'determined that the blocked information furnished by [Capital One] is accurate and complete.'" *Id.* ¶¶ 29, 33; Exs. 4, 5. Critically, Plaintiff challenges the rescission of the block on the 0754 account by invoking Capital One's fraud determinations on the 9155 and 9241 accounts—but he does not allege, and no exhibit indicates, that Capital One or Early Warning ever determined that the 0754 account was the product of fraud.[3] *See generally id.*

### C. Purported File Disclosure Request

Plaintiff claims he faxed a consumer file disclosure request to Early Warning on October 14, 2024. *Id.* ¶¶ 10-11. Early Warning "'has no record of receiving any requests or demands from [Plaintiff]" prior to December 2024 (*id.* ¶ 20; Ex. 2), when Plaintiff sent numerous faxes and emails. *Id.* ¶¶ 12-15, 20. Regardless, however, Plaintiff concedes that Early Warning sent him a "Comprehensive File Disclosure" on January 7, 2025. *Id.* ¶ 18; Ex. 1.

---

[2] Redacted copies of Plaintiff's exhibits were filed as ECF Nos. 21-1 and 28-1. Unredacted copies of Plaintiff's Exhibits 1, 34, 27, and 42 were filed under seal. *See* ECF No. 27.

[3] Beyond the three Capital One accounts, Plaintiff alleges that "[b]etween January 15, 2025 and January 23, 2025, [Early Warning] deleted . . . records from Plaintiff's file" for accounts from Bank of America, Bank Mobile, Fidelity Investments, Washington Savings Bank MA, and Wells Fargo because "they were 'incomplete, inaccurate, or could not be verified.'" *Id.* ¶¶ 25-26 (citations omitted)

### D. Early Warning's Dispute Investigations

Plaintiff concedes that he never submitted a dispute of specific information to Early Warning. *Id.* ¶¶ 22, 53. He acknowledges that he "could not have disputed the completeness or accuracy of specific information he had never seen, and did not do so." *Id.* ¶ 53. He claims instead that Early Warning "self-initiated" disputes and reinvestigations after characterizing his December 2024 correspondence—which demanded blanket deletion of all negative information—as a consumer dispute. *Id.* ¶¶ 21-24.

### E. Plaintiff's Alleged Damages

Plaintiff alleges six "adverse actions"—account denials at PNC Bank, Capital One, Millbury Federal Credit Union, Affirm/Celtic Bank, and Ally Bank, as well as the closure of two Wells Fargo deposit accounts—spanning from May 2025 through March 2026. *Id.* ¶¶ 37-38. Notably, several of these adverse actions predate Early Warning's February 10, 2026 rescission of the identity theft block on which Plaintiff's claims principally rest. *Compare id.* ¶ 33 (recission in February 2026), *with* ¶¶ 37-38 (six "adverse actions" from May 2025 through March 2026). Plaintiff also alleges "clinically significant regression" to his mental health, including an October 2025 hospital visit. *Id.* ¶¶ 39-40. Plaintiff does not allege how these damages are distinct from those he seeks in his other pending FCRA lawsuits. *See* Section II.A, *supra*.

## III. ARGUMENT

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[N]aked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557. If "the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has" not adequately "show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. Courts "must take all of the factual allegations in the complaint as true," but "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (*quoting Twombly*, 550 U.S. at 555) (internal quotations omitted)).

### B. Plaintiff's Complaint Should Be Dismissed Because the FCRA Claims are Inadequately Pled and Fail as a Matter of Law.

#### 1. Plaintiff does not adequately plead a Section 1681g claim (Count I).

Section 1681g requires consumer reporting agencies to "disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). To state a viable claim under Section 1681g of the FCRA, a plaintiff must "provide sufficient evidence to show that" he requested a disclosure, the defendant failed to provide it, the plaintiff suffered actual damages, and the damages were caused by the failure to disclose. *Bell-Loffredo v. Equifax Info. Servs., LLC*, No. 2:21-CV-03637-CBM-EX, 2022 WL 16894504, at *2 (C.D. Cal. Oct. 6, 2022). Plaintiff's claim rests primarily on the theory that Early Warning untimely responded to his October 14, 2024 fax with an "inadequate" disclosure. SAC ¶¶ 45-50. This theory and Plaintiff's claim fails for multiple independent reasons.

*First*, the allegations are threadbare: Plaintiff pleads only that he faxed a request and that Early Warning did not respond "within the time required by 15 U.S.C. § 1681g(a)," without alleging that Early Warning received the fax, processed it, or even that the number dialed was designated for consumer file disclosure requests. *Id.* ¶¶ 10-11, 45-48; *see Ortez v. RentGrow, Inc.*, No. 24-10376-FDS, 2024 WL 4349252, at *4 (D. Mass. Sept. 30, 2024) (plaintiff must allege more than just that the defendant "fail[ed] to disclose [his] full file as requested") (internal quotations and citation omitted); *Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866,

at *9 (D. Md. Dec. 13, 2016) (dismissing Section 1681g claim where the plaintiff "does not allege, with appropriate specifics").

*Second*, Early Warning "'has no record of receiving any requests or demands from [Plaintiff] prior'" to December 2024. SAC ¶ 20; Ex. 2.

*Third*, Section 1681g(a) imposes no time period in which a consumer reporting agency ("CRA") must respond to a consumer's disclosure request—it requires only that the CRA disclose the file, which Early Warning did.[4] Plaintiff himself concedes that Early Warning sent him a "Comprehensive File Disclosure" on January 7, 2025. *Id.* ¶ 18; Ex. 1; *see also McAfee v. Early Warning Services*, *LLC*, No. 1:25-cv-578, 2026 WL 693172, at *5 (S.D. Oh. Mar. 12, 2026) ("[P]roof that [the CRA] properly mailed the consumer's file fully satisfies [the CRA's] disclosure obligations under § 1681g.").

*Fourth*, Plaintiff's alternative theory—that the January 7, 2025 disclosure was "inadequate" because it listed a Social Security number with two incorrect digits (SAC ¶ 48)—fares no better. A Social Security number is "credit header data" that "does not bear on creditworthiness" and is not actionable under the FCRA. *Karle v. Sw. Credit Sys.*, No. CV 14-30058-MGM, 2015 WL 5025449, at *3 (D. Mass. June 22, 2015) (internal quotations and citation omitted), *report and recommendation adopted sub nom. Karle v. Sw. Credit Sys., Ne. Utilities Serv. Co.*, No. 14-30058-MGM, 2015 WL 5031966 (D. Mass. Aug. 25, 2015). In any event, "the operative question under § 1681g is whether a disclosure is unclear such that the consumer cannot determine the accuracy of the information in that disclosure." *Alexander v. Equifax Info. Servs., LLC*, No. 2:17-cv-0139-APG-NJK, 2018 WL 3025939, at *6 (D. Nev. Jun. 15, 2018), *aff'd sub*

[4] The absence of a timing requirement in Section 1681g is made plain by comparison with other FCRA provisions. For example, Section 1681i(a)(1)(A) expressly requires compliance "before the end of the 30-day period."

*nom. Alexander v. Experian Info. Sols., Inc.*, 812 F. App'x 426 (9th Cir. 2020). Plaintiff's own allegations defeat this theory: he was plainly able to compare the Social Security number against his own and identify the discrepancy—which is the opposite of a disclosure "so unclear that [the plaintiff] could not determine its accuracy." *Id.* at *6; *see also Scott v. Equifax, Inc.*, No. 2:20-cv-2516-HLT-JPO, 2021 WL 4099007, at *2 (D. Kan. July 23, 2021) (plaintiff "must specify what information is missing from the disclosure or contain specific facts that the plaintiff relied upon to allege that the defendant did not provide all information in the consumer's file.").[5]

*Fifth*, and finally, even if Plaintiff could state a Section 1681g claim, he has not plausibly alleged causation. Section 1681g requires disclosure of the CRA's file to the ***consumer***—not to third parties. 15 U.S.C. § 1681g(a). Plaintiff's six alleged "adverse actions" were taken by non-party financial institutions, and Plaintiff does not—and cannot—allege how Early Warning's purported failure to disclose his file ***to him*** caused those non-parties to deny his applications, especially when the only alleged inaccuracy related to his social security number, which does not bear on creditworthiness." *Karle*, 2015 WL 5025449, at *3; *see* SAC ¶¶ 37-42, 50. And his claim that the purported violation caused "regression" in his mental health due to "ongoing credit-reporting inaccuracies" is similarly belied by the fact that any issue with his social security number had no impact on his creditworthiness. *Compare id.* ¶¶ 39-40 (stress treatment). Nor does Plaintiff allege how these damages are distinct from those he seeks in his other pending FCRA lawsuits. *See* Section II.A, *supra*.

[5] Plaintiff does not allege that the file disclosure was missing ***any*** information. *See* SAC ¶¶ 45-50; *see, e.g., Eller v. Experian Info. Sols., Inc.*, No. 09-cv-00040-WJM-KMT, 2011 WL 3365955, at *23 (D. Colo. May 17, 2011) (dismissing a Section 1681g claim because Experian disclosed "all information in the consumer's file at the time of the request") (internal quotations and citation omitted), *report and recommendation adopted*, No. 09-CV-00040-WJM-KMT, 2011 WL 3365513 (D. Colo. Aug. 4, 2011).

### 2. Plaintiff's 1681i claims (Count II and IV) are similarly deficient as a matter of law.

Plaintiff alleges that Early Warning violated Section 1681i by "self-initiat[ing] furnisher disputes" and "reinserting" the Capital One 0754 account into his consumer file. *Id.* ¶¶ 51-56, 64-70. To state a viable Section 1681i(a) claim, a plaintiff must allege that his consumer report contains inaccurate information, that he notified the CRA of the inaccuracy, that the CRA failed to conduct a reasonable reinvestigation, and that the failure caused him damages. *See Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1329 (S.D. Fla. 2011). The SAC fails to satisfy any of these elements.

#### *a. Plaintiff did not submit any disputes to Early Warning.*

Section 1681i(a) is triggered only when a consumer disputes "the completeness or accuracy of any item of information" in his file and "notifies the agency." 15 U.S.C. § 1681i(a)(1)(A). A plaintiff who never notified the CRA of a dispute cannot state a claim. *See Norman v. Trans Union, LLC*, 479 F. Supp. 3d 98, 114 (E.D. Pa. 2020). Accordingly, "to state a claim for violation of [FCRA] section [1681i(a)], the consumer must allege that the credit reporting agency had notice of the disputed information and failed to [reasonably] reinvestigate." *See, e.g.*, *Allmond v. Bank of Am.*, No. 3:07–cv–186–J33-JRK, 2008 WL 2445652, at *3 (M.D. Fla. June 16, 2008). A plaintiff who never notified the consumer reporting agency of a dispute cannot state a claim under Section 1681i(a). *See, e.g.*, *Hyde v. Franklin Am. Mortg. Co.*, 453 F. Supp. 3d 1293, 1302 (D.S.D. 2020) (dismissing FCRA claim where the plaintiff "failed to produce any documentation that he submitted a complaint to a CRA").

Plaintiff concedes that he never submitted any dispute to Early Warning. SAC ¶¶ 22, 53. The concession is unambiguous: he alleges that he "had not been shown the contents of his" file and therefore "could not have disputed the completeness or accuracy of specific information he

had never seen, and did not do so." *Id.* ¶ 53. This is an affirmative admission that the statutory predicate for his Section 1681i claims does not exist—not a gap that amendment could cure. Plaintiff's attempt to recast this deficiency by contending that Early Warning "self-initiated" disputes after characterizing his correspondence as a consumer dispute (*id.* ¶¶ 21-24) turns Section 1681i on its head: the statute requires the consumer to dispute information and notify the agency, not the reverse.

***b. Plaintiff has not pled that Early Warning published any inaccurate information about him.***

Plaintiff's Section 1681i claims independently fail because he has not identified a single factual inaccuracy in any consumer report. "[A] plaintiff pleading a violation of Section 1681i(a) must plead that 'the reported information was in fact inaccurate.'" *Vaiano v. Experian Info. Sols. Inc.*, No. 1:24-cv-12245-JEK, 2025 WL 2323521, at *3 (D. Mass. Aug. 12, 2025) (*quoting DeAndrade*, 523 F.3d at 67); *Verlus v. Experian Info. Sols., Inc.*, No. 23-cv-11426-DJC, 2025 WL 836588, at *3 (D. Mass. Mar. 17, 2025) ("As a threshold matter, to state a claim for violation of Sections 1681e(b) and 1681i of the FCRA, a plaintiff must allege plausibly that his or her credit report contains 'an actual inaccuracy.'") (*quoting DeAndrade*, 523 F.3d at 66-67). This is a "threshold step," *Vaiano*, 2025 WL 2323521, at *2, that "demands a showing that the report contained an entry or entries that a jury could find were either false or materially misleading," *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 96 (1st Cir. 2022) (citing cases). Plaintiff's SAC identifies no such inaccuracy.

The SAC's principal theory—that Early Warning's January 7, 2025 file disclosure listed a Social Security number with two incorrect digits (SAC ¶¶ 16, 19, 48, 73(a))—does ***not*** establish an actionable inaccuracy. A Social Security number is "credit header data" that "is typically printed at the top of credit reports," along with other identifying information, such as name,

address, and phone number. *Remsburg v. Docusearch, Inc.*, No. CV-00-211-B, 2002 WL 534439, at *2 & fn.3 (D.N.H. Apr. 4, 2002) (citation omitted). "'[C]redit header data,' which includes a person's social security number, '[is] not subject to the FCRA because it does not bear on creditworthiness.'" *Karle*, 2015 WL 5025449, at *3 (*quoting Individual Reference Servs. Grp., Inc. v. F.T.C.*, 145 F. Supp. 2d 6, 17 (D.D.C. 2001)). Thus, the reporting of a social security number—or any other "credit header data"—is not actionable under the FCRA. *Id.* (internal quotations and citation omitted); *see also Varad v. Reed Elsevier Inc.*, No. 06-11370 MLW, 2008 WL 11511440, at *5-6 (D. Mass. Feb. 26, 2008) (dismissing FCRA claims based on a purported report with credit header data), *report and recommendation adopted*, No. CV 06-11370-MLW, 2008 WL 11511439 (D. Mass. May 3, 2008). Moreover, even if a purported discrepancy in a social security number could be actionable under the FCRA (which it is not), Plaintiff does not allege—nor could he—that this identifier discrepancy appeared in any consumer report furnished to a third party, that any third party relied on it, or that it caused any of the adverse actions or damages he alleges. *See* SAC ¶¶ 51-73.

Nor does the SAC plead an actionable inaccuracy based on Early Warning's reporting of the Capital One 0754 account. Plaintiff appears to suggest that Early Warning erred by rescinding the identity theft block on that account—but he does not allege that Capital One or Early Warning ever determined that the 0754 account was fraudulent. *Id.* ¶¶ 29, 32-35; Exs. 3-5. Capital One's fraud determinations concerned only accounts ending 9155 and 9241—neither of which is the account Early Warning blocked and rescinded. *Id.* ¶¶ 24, 32. Plaintiff's "three contradictory determinations" theory (*id.* ¶ 34) does not alter this analysis: Early Warning's actions regarding the 0754 account were consistent with Capital One's verification of that specific account, and

Plaintiff alleges no facts tying the fraud determinations on accounts 9241 or 9155 to the accuracy of the information Early Warning maintained on account 0754. *See id.* ¶¶ 29, 32-34.

In any event, Plaintiff's identity theft claim is, at bottom, a legal challenge to the validity of his Capital One accounts—not a factual dispute about the accuracy of reported information. The First Circuit has squarely held that FCRA claims must be predicated on factual inaccuracies, not "disputed legal questions." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010); *see also DeAndrade*, 523 F.3d at 68. Consumer reporting agencies are "neither qualified nor obligated to resolve" matters that "turn[] on questions that can only be resolved by a court of law," such as alleged fraud or identity theft. *DeAndrade*, 523 F.3d at 68; *see also Rozov v. Bank of America, N.A.*, No. 24-13034, 2025 WL 1620921, at *3 (11th Cir. Jun. 9, 2025) ("[F]raud schemes are often complex and sifting perpetrator from victim is no easy process."); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) (similar); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368-69 (11th Cir. 2024) (similar). Plaintiff cannot assert an actionable inaccuracy under any set of facts related to alleged identity theft.

#### *c. Plaintiff has not pled that Early Warning failed to reasonably investigate or caused any of his alleged damages.*

Plaintiff's Section 1681i claims fail for the additional reason that he has not pled that Early Warning's investigations were unreasonable or caused him harm. Plaintiff asserts that Early Warning initiated an "unauthorized" investigation and completed furnisher verifications within seventy-two hours—but nothing in Section 1681i prohibits a CRA from initiating its own investigation, and the speed of a furnisher's response does not render a reinvestigation unreasonable. SAC ¶¶ 23-24, 28, 52-54. His "Ownership Relationship" theory (*id.* ¶ 5)—that Capital One's ownership interest in Early Warning tainted the verification—is conjecture unsupported by any factual allegation. *See Iyigun v. Cavalry Portfolio Servs., LLC*, Case No.

CV-12-8682-MWF (JEMx), 2013 WL 950947, at *2 (C.D. Cal. 2013) (dismissing FCRA claim premised on "merely conclusory recitations").

***d. Plaintiff's claim under 1681i(a)(5)(B) (Count IV) is also deficient because Capital One certified Plaintiff's account as valid.***

Plaintiff's Section 1681i(a)(5)(B) claim (Count IV) is independently meritless. That provision governs the reinsertion of information "previously deleted" as a result of a Section 1681i(a) reinvestigation. 15 U.S.C. § 1681i(a)(5)(B); *see also Watson v. Trans Union Credit Bureau*, No. Civ. 04-205-B-C, 2005 WL 995687, at *6 (D. Me. Apr. 28, 2005). But Plaintiff's own pleading confirms that Early Warning never deleted any Capital One account pursuant to a Section 1681i(a) reinvestigation. Rather, Early Warning placed an identity theft block on account 0754 on January 27, 2026—an action governed by Section 1681c-2, not Section 1681i(a)—and later rescinded that block on February 10, 2026. SAC ¶¶ 29, 33, 66; Exs. 4, 5.

Plaintiff's attempt to circumvent this deficiency through alternative pleading (*id.* ¶ 68) is unavailing. He argues that even if an identity theft block under Section 1681c-2 is not a "deletion" within the meaning of Section 1681i(a)(5)(B), Early Warning's reinsertion should "functionally" be treated as governed by that provision. *Id.* But the statutory text draws a clear distinction between deletions arising from Section 1681i(a) reinvestigations and blocks placed under Section 1681c-2. Congress enacted Section 1681c-2 with its own rescission and notice framework (15 U.S.C. § 1681c-2(c)(2)) precisely because identity theft blocks are a separate and independent statutory mechanism from Section 1681i(a)(5)(B). Plaintiff himself concedes the point by asserting a separate Section 1681c-2 claim in Count III.

**3. Plaintiff does not sufficiently plead that Early Warning violated Section 1681c-2 (Count III).**

Plaintiff's claim under Section 1681c-2 fares no better. Section 1681c-2 "'requires a consumer reporting agency, after being provided with specified documentation by a consumer

that certain information was the result of alleged identity theft, to block that information and notify the furnisher.'" *Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 13 fn.11 (1st Cir. 2022) (*citing* 15 U.S.C. § 1681c-2(a)). That specified documentation includes "(1) proof of the identity of the consumer; (2) a copy of the identity theft report; (3) the identification of the information resulting from the alleged identity theft; and (4) a statement by the consumer affirming that the disputed information does not relate to any transaction by the consumer." *Grayson v. Equifax Credit Info. Servs.*, No. 18-cv-6977 (MKB), 2021 WL 2010398, at *5 (E.D.N.Y. Jan. 29, 2021) (internal quotations and citations omitted).

Critically, Section 1681c-2 expressly "gives CRAs some authority to decline or rescind requested blocks" where the agency "'reasonably determines that:' (a) the block was requested or placed in error; (b) the block or request was based on a material misrepresentation of fact by the consumer; or (c) the consumer received goods, services, or money as a result of the blocked transaction." *Osada v. Experian Info. Solut., Inc.*, No. 11 C 2856, 290 F.R.D. 485, 489 (N.D. Ill. 2012) (brackets omitted) (*quoting* 15 U.S.C. § 1681c-2(c)(1)). Upon rescission, the agency "must 'promptly' notify the consumer 'in the same manner as . . . under section 1681i(a)(5)(B) of this title." *Id.* (ellipsis in original) (*quoting* 15 U.S.C. § 1681c-2(c)(2)).

Early Warning satisfied each of these requirements—as Plaintiff's own allegations confirm. He does not—and cannot—contend that Early Warning failed to place the block or failed to provide notice upon rescission. SAC ¶¶ 29, 33, 57-63; Exs. 4, 5. Early Warning timely blocked the Capital One 0754 account on January 27, 2026, and provided prompt written notice when it rescinded the block on February 10, 2026. *Id.* Stripped of rhetoric, Plaintiff's claim reduces to bare disagreement with Early Warning's determination that the blocked information was "accurate and complete"—but bare disagreement, without a single factual allegation

explaining how or why the rescission failed to satisfy Section 1681c-2(c), does not state a claim. *Id.* ¶¶ 58-63; *see Twombly*, 550 U.S. at 555, 557; *see also Grayson*, 2021 WL 2010398, at *6 (dismissing Section 1681c-2 claim because plaintiff "has not pled facts showing that Defendant violated its duties under section 1681c-2").

Plaintiff's attempt to salvage this claim by invoking Capital One's February 6, 2026 fraud determination and the "Ownership Relationship" only underscores its deficiency. The fraud determination concerned account ending 9241—but Plaintiff never alleges that Early Warning blocked or rescinded a block on that account, or that Capital One found the 0754 account to be fraudulent. SAC ¶¶ 29, 32-34, 59-61; Exs. 3-5. And the "Ownership Relationship" theory—that Early Warning's verification of Capital One accounts is inherently suspect because Capital One holds an ownership interest in Early Warning—is conjecture unsupported by any factual allegation that the ownership structure influenced Early Warning's rescission decision. Plaintiff asks this Court to infer a Section 1681c-2 violation based on a fraud determination for an account he never alleges Early Warning blocked, rescinded, or even reported—precisely the type of speculative leap that Rule 8 does not permit.[6]

**4. Plaintiff's 1681e(b) claim (Count V) is inadequately pled and fails as a matter of law.**

Plaintiff alleges that Early Warning violated Section 1681e(b), which requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of" consumer report information. 15 U.S.C. § 1681e(b); SAC ¶¶ 71-75. To state a claim of noncompliance with Section 1681e(b), a plaintiff must plead that inaccurate information was included in a consumer

[6] Any attempts by Plaintiff to amend his Section 1681c-2 claim will be futile. EWS never reported, blocked, or rescinded a block as to Capital One account ending 9241—which appears to form the sole basis for Plaintiff's claim.

report, that the inaccuracy resulted from unreasonable procedures, that the consumer suffered injury, and that the injury was caused by the inaccurate entry. *Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 85 (D. Mass. 2001). The SAC fails on each element.

***a. Plaintiff has not pled that Early Warning published any consumer reports about him.***

Plaintiff's Section 1681e(b) claim fails at the threshold because it does not arise from a "consumer report." Section 1681e(b) applies only to the preparation of "consumer reports." *See* 15 U.S.C. § 1681e(b); *Merchant v. Equifax Information Services, LLC*, 616 F. Supp. 3d 146, 150 (D. Mass. 2022). Nowhere does the SAC allege that Early Warning actually prepared or furnished any specific consumer report about Plaintiff. *See* SAC ¶¶ 71-75. Although certain adverse-action notices identify Early Warning as a reporting agency (*id.* ¶¶ 37(a), (c)-(e)), Plaintiff does not allege what information any report contained or whether any inaccuracy appeared in it. His allegations instead focus on a file disclosure under Section 1681g—but a file disclosure is not a consumer report. *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007) ("A 'consumer report' is a report prepared for third parties while a 'consumer disclosure' is the consumer reporting agency's file it reveals to the consumer, not a third party.") (citation omitted).

***b. Plaintiff has not pled that Early Warning published any inaccurate information about him.***

Plaintiff's Section 1681e(b) claim independently fails for the additional reason that he has not pled—and cannot plead—that Early Warning published any material inaccurate information about him that caused his alleged damages. As with Section 1681i, accuracy is the linchpin of any Section 1681e(b) claim: "[t]o prevail on a claim of noncompliance with § 1681e(b), a plaintiff must establish, *inter alia*, that ***inaccurate information*** was included in a consumer report . . . ." *Merchant*, 616 F. Supp. 3d at 150 (emphasis added). This is a "threshold step," *Vaiano*, 2025 WL 2323521, at *2, that "demands a showing that the report contained an entry or entries that a

jury could find were either false or materially misleading," *McIntyre*, 34 F.4th at 96. As set forth in Section III.B.2.b, the SAC identifies no actionable inaccuracy: the Social Security number discrepancy is non-actionable "credit header data" that allegedly appeared only in a file disclosure; Capital One never determined that the 0754 account was fraudulent; and Plaintiff's identity theft allegations challenge the legal validity of accounts (which are not actionable against a CRA under the FCRA), not the factual accuracy of reported information. *See Merchant*, 616 F. Supp. 3d at 150; *Vaiano*, 2025 WL 2323521, at *2.

***c. Plaintiff has not sufficiently pled that Early Warning's procedures are unreasonable or that Early Warning caused his damages.***

Plaintiff's claim also fails because he has not pled unreasonable procedures or causation. Section 1681e(b) "does not impose strict liability"; a plaintiff must plead that the CRA failed to follow reasonable procedures and that the failure caused his damages. *Richardson*, 190 F. Supp. 2d at 86 (internal quotations and citation omitted); *Vaiano*, 2025 WL 2323521, at *3. The SAC's five-part list of purported failures (SAC ¶ 73(a)-(e)) identifies outcomes, not procedures—Plaintiff does not identify any actual procedure Early Warning employed or explain how it was unreasonable. And rather than plead any nexus between Early Warning's procedures and his alleged injuries, Plaintiff simply declares that he is "entitled" to damages—a naked legal conclusion. *Id.* ¶ 75; *see Vaiano*, 2025 WL 2323521, at *3. This deficiency is compounded by the fact that Plaintiff seeks the same damages—"credit-related harm" and emotional distress—in eleven other pending lawsuits in this District, yet makes no effort to differentiate the harm allegedly caused by Early Warning. *See* Section II.A, *supra*.

**C. Plaintiff Should Not Be Granted Leave to Amend**

Plaintiff's claims should be dismissed with prejudice because further amendment would be futile. "An amendment is futile if the proposed amended complaint would not survive a Rule

12(b)(6) motion." *Andre v. Customer Bank*, No. 25-cv-10477-AK, 2026 WL 179484, at *4 (D. Mass. Jan. 23, 2026) (*citing Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Plaintiff has now had three opportunities to state a viable FCRA claim—his original Complaint, his First Amended Complaint, and now his Second Amended Complaint—and has failed each time. With each iteration, he abandons prior theories and substitutes new ones, but the structural deficiencies remain. Early Warning responded to Plaintiff's file disclosure request, defeating his claim under Section 1681g. Plaintiff also cannot identify a single factual inaccuracy in any consumer report Early Warning issued—a threshold requirement under Sections 1681e(b) and 1681i. Nor can he retract his concession that he never disputed specific information with Early Warning, independently dooming his Section 1681i claims. Plaintiff also cannot overcome his inability to connect the fraud determination on account 9241 to the block Early Warning placed on account 0754, undermining his Sections 1681c-2 and 1681i(a)(5)(B) claims. No repleading can cure these deficiencies. Dismissal with prejudice is the only appropriate disposition.

## IV. CONCLUSION

Therefore, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Dated: September 28, 2026

Respectfully submitted,

/s/ *Matthew J. Zamaloff*
Matthew J. Zamaloff (BBO No. 642831)
Cetrulo LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210
(t): 617 217 5500
(f): 617 217 5200
mzamaloff@cetllp.com

*Attorney for Defendant Early Warning Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 28, 2026, the foregoing DEFENDANT EARLY WARNING SERVICES, LLC'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Matthew J. Zamaloff*
Matthew J. Zamaloff